IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARTIN TAPIA,

      Petitioner,               No. CIV S-08-1291 DAD P

  vs.

LARRY SMALL, Warden,

      Respondent.          ORDER

_____/

This court hereby vacates the order issued on August 2, 2010 (Dkt. No. 28), and issues the following order.[1]

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on May 24, 2005, in the San Joaquin County Superior Court on charges of kidnapping, forcible rape, and making criminal threats. Respondent has filed an answer to the petition and, pursuant to court order, a motion to dismiss. Upon careful consideration of the record and the applicable law, and for the reasons discussed below, the undersigned will deny

---

[1] In this habeas action the parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). At the conclusion of the order denying petitioner's application for a writ of habeas corpus, however, the undersigned erroneously utilized language associated with findings and recommendations. This order merely corrects that clerical error.

both respondent's motion to dismiss and petitioner's application for habeas corpus relief.

PROCEDURAL AND FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> According to the victim, she had met the defendant in December 2002 and dated him until mid-February 2003, at which point she decided to distance herself from him. As she vaguely described it, he made remarks that left her feeling uncomfortable although not afraid for her safety. Their relationship included sexual intimacy.
>
> On the occasion of her 37th birthday in March 2003, she went to a Lodi dance club to meet friends and relatives. She saw the defendant. She claimed at trial that his presence was unwelcome, and denied making any plans to meet him there. After a couple of beers, she found herself feeling unusually lightheaded.[2] When her cousin refused her request to take her home, she acceded to the defendant's offer to drive her, in her car, back to her house, where a friend would pick him up.
>
> It was difficult for her to focus while they were driving. At some point, she realized the defendant was traveling on the freeway in the opposite direction from her home. When she called this to his attention, he became violent; he struck her, and also threatened her with death. She calmed down because she did not want him to lose control of the car.
>
> They eventually arrived at the defendant's residence, which was about 20 minutes from the freeway in Herald. He lived in a trailer about 50 feet behind two mobile homes on a horse ranch where he worked. They struggled when they got out of the car. She screamed for help, but no one responded. When he began to choke her, she lost consciousness.
>
> Her next memory was of lying on the floor in the kitchen area of the trailer. She could hear the defendant swearing in the next room. Her skirt was up, her underwear was down around her thighs, and her boots were off. Her vagina was sore.
>
> The defendant approached her. As he stood over her, he told her that she was "dirty" and "was going to die," at which point he hit her on the head with a frying pan. She blacked out again.

---

[2] Subsequent toxicology tests did not detect the presence of any chemicals that might have contributed to this feeling.

When she recovered her senses, it was already light outside. She heard the defendant snoring in the other room. She quietly gathered up her things and went outside, looking for her keys that had been lost in the struggle. Retrieving them, she got in the car and tried to call 911, but did not have a signal on her cell phone. She did not bother going to the other residences because no one had come to her assistance earlier. She started the car and drove off just as the defendant was coming out of the trailer. She stopped near the freeway and was able to call for help.

She did not know whether the defendant ever had intercourse with her. However, she had not at any point consented to having sexual activity with him the night before. Investigators found sperm and semen in the victim's vagina matching the defendant's genetic profile, though it is not possible to establish how long it had been present. The treating physician found an abrasion inside her labia majora consistent either with consensual or nonconsensual intercourse; it could have been anywhere from a few hours to a couple of days old. He did not notice any injuries to her head other than some contusions and abrasions.

The victim received a voice message on her cell phone from the defendant shortly afterward. He stated that he loved her and asked for her forgiveness.

The defendant admitted having convictions in 2001 for child endangerment and making criminal threats. After his testimony, the prosecutor called her final witness, who was the defendant's former cohabitant (and mother of his two sons). In 2001, he had tried to stab her and her daughter when he was drunk, and had threatened to kill them.

B

The victim admitted that she had difficulty remembering anything else from her birthday other than the above-related events because she avoided thinking about that day. (The trial took place two years later.) She did not remember making any statements to investigators about her activities earlier on her birthday, even after reviewing their reports, and she denied ever telling the emergency paramedics that a group of farm workers had attacked her after meeting her at a bar.

According to a deputy sheriff who interviewed her at the hospital, the victim said that she had gone to dinner and a movie with the defendant and her son before eventually going to the dance club. She began to describe the circumstances of the evening when he stopped her account because it was a crime that began in the jurisdiction of the Lodi Police Department and concluded in Sacramento County. She had not mentioned any sexual assault before he stopped questioning her.

The police officer who took over the interview testified that the victim described making breakfast for the defendant and her son on the morning of her birthday and spending the rest of the day with the defendant. This included dinner at Tony Roma's and a movie, after which they dropped off the victim's son before going dancing. She had asked the defendant to drive her home from the club because she felt unusually dizzy. Her account otherwise tracked her testimony, other than the inclusion of an additional memory in which she recalled the defendant pulling her underwear down before she blacked out again. She did not describe having any consensual sexual encounters with the defendant over the course of the weekend preceding her birthday.

In light of the reports of the investigators, the prosecutor admitted that the victim's memory "just isn't good" for the other details of that day. She argued, however, that this was simply a genuine failure of memory about trivial matters that paled in comparison with the impact of the victim's consistent account of the attack at the trailer.

C

The defendant claimed that he had spent the entire weekend with the victim before her birthday. On the night before, they had engaged in consensual intercourse (during which the defendant had ejaculated four times in her vagina). They spent the next day together with her son, eating at Tony Roma's and seeing a movie. They returned to her home and, after her son left with friends, again had consensual intercourse that ended with the defendant ejaculating in her vagina.

They went to the dance club. The victim eventually told the defendant she had an appointment the next morning and they should leave. She drove them to the defendant's trailer, where she had intended to spend the night. When they parked, she began to castigate him about the attention he received from two women at the bar. She struck him repeatedly. In defending himself at the entrance to the trailer, he pushed her away and she fell down the stairs. She pursued him inside, where she continued her attack on him and he tried to defend himself. Eventually, they went to sleep. She was still there when he awoke, and was still angry at him. She left without further incident. He denied having any sexual relations with her while she was at the trailer.

According to one of the emergency paramedics that treated her, the victim said that she had met several farm workers in a bar who attacked her on a ranch. He acknowledged that his report did not include anything to this effect, and that it was possible he was recalling a different incident. The ambulance driver did not recall

/////

4

> the victim talking about farm workers attacking her.[3] A deputy sheriff who had responded to the location where she had parked testified that during the paramedic's treatment of the victim, she did not seem coherent or able to make a statement.
>
> The owner of the horse ranch lived in one of the mobile homes near the defendant's trailer. Neither she nor her friend recalled hearing anything out of the ordinary on the night of the attack. She was familiar with a female visitor of the defendant who drove a red car.[4] She recalled seeing the defendant and the woman early one morning; they seemed to be speaking calmly, after which the woman drove off. The ranch owner was not sure if that was the day on which an officer spoke with her.[5]

People v. Tapia, No. C050402, 2006 WL 3586260, at **1-3 (Cal. App. 3 Dist. Dec. 11, 2006) (hereinafter Opinion).

On appeal of his conviction, petitioner raised the following grounds for relief: (1) the evidence introduced at his trial was insufficient to support his conviction on the rape charge; (2) the trial court erred in failing to instruct the jury on lesser included offenses: (3) the trial court violated his right to due process by instructing the jury on witness credibility in a biased manner; (4) the admission into evidence at his trial of prior acts of domestic violence violated his constitutional rights; and (5) the trial court violated his right to due process by permitting the jury to consider the evidence of the prior acts of domestic violence in connection with a count as to which that evidence was irrelevant. (Resp't's Lod. Doc. No. 3.) After the California Court of Appeal affirmed petitioner's judgment of conviction, petitioner filed a petition for review in the

/////

/////

---

[3] Apparently the driver may have told an investigator about the farm workers. The investigator included the statement in his report (which he reviewed without any effect on his memory). However, the trial court ruled that the witness had a genuine lack of memory and refused to allow admission of the report as a prior inconsistent statement.

[4] The victim owned a red compact car.

[5] The victim's birthday was March 2. The officer testified that he did not speak with the ranch owner until March 4, at which time she had not spontaneously mentioned anything about seeing a woman with a red car the day before.

5

California Supreme Court, in which he raised these same claims. (Sec. Am. Pet. at 7-13; Resp't's Lod. Doc. No. 6.)[6] That petition was summarily denied. (Resp't's Lod. Doc. No. 7.)

On June 9, 2008, petitioner filed a petition for writ of habeas corpus in this court. That petition was dismissed twice with leave to amend because petitioner had named the wrong respondent. On September 8, 2008, petitioner filed the second amended petition upon which this action is now proceeding. Therein, petitioner raised claims that appeared to this court to be different from the issues he had raised on appeal in state court.[7] In his answer to the second amended petition, respondent addressed the issues raised in petitioner's brief on appeal and petition for review filed in state court. Specifically, respondent's answer addressed the issues raised by petitioner on appeal in state court of insufficiency of the evidence, jury instruction error, and the improper admission into evidence of prior acts of domestic violence. Respondent's answer did not appear to address the claims actually raised by petitioner in the second amended petition pending before this court. Accordingly, respondent was directed to file an amended response addressing the allegations contained in petitioner's second amended petition, which is the operative pleading in this federal habeas action.

Respondent filed an amended answer on March 29, 2010. Therein, counsel for respondent explained that he is addressing petitioner's claims "*solely* to the extent" they mirror the claims raised by petitioner in the California Supreme Court. (Am. Answer at 1.) (emphasis in original.) Counsel also argues that, to the extent petitioner's claims presented to this court are not the same as the issues he raised on appeal in state court, they are unexhausted. (Id. at 7-9.) After reviewing respondent's amended answer, the court directed respondent to file a motion to dismiss the second amended complaint. Respondent filed a motion to dismiss on May 15, 2010.
/////

---

[6] This court will refer to page numbers of the parties' pleadings by using the automated numbers assigned by the court's electronic filing system.

[7] Those difficult to decipher claims will be described and addressed in detail below.

Therein, respondent argues that all of the claims contained in the instant petition are unexhausted because they do not correspond to the issues petitioner raised on appeal in state court.

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

7

of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

    A. Introduction

The claims set forth in the second amended petition pending before this court, which are divided into four "grounds," are extremely difficult to decipher. First, petitioner claims that his conviction was "obtain (sic) by a violation of the privilege against and to disclose to the defendant evidence favorable to defendant." (Sec. Am. Pet. at 15.) In the "supporting facts" section of the second amended petition, petitioner explains that there was a witness who could have supported his trial testimony that he did not assault the victim. (Id.) This witness apparently was not called to testify at petitioner's trial.

Second, petitioner claims that his conviction was obtained in violation of the Double Jeopardy Clause. Petitioner also mentions "recantation of witness." (Id.) In the "supporting facts" section of the second amended petition, petitioner appears to be claiming either that the evidence introduced at his trial did not support the jury's verdict, or that relevant evidence was not introduced at his trial. (Id.)

Third, petitioner claims that his trial counsel rendered ineffective assistance by failing to fully investigate his case and by failing to introduce relevant evidence at trial. (Id. at 16.) Petitioner's fourth claim for relief is described as "self defense." (Id.) In the "supporting facts" section of the second amended petition, petitioner appears to be claiming that he slapped the victim in self-defense. Petitioner also states that evidence the victim was "due in court on a DUI" on "the day in question" was suppressed. (Id.) In several pages attached to the form petition, petitioner includes a lengthy explanation of his version of events on the day of the kidnap and rape of which he was convicted. (Id. at 24-33.) Petitioner has also attached: several questions asked by the jurors at his trial during the course of their deliberations; the state court transcript of his motion for substitute counsel; several letters from his trial counsel to petitioner; and portions of the trial transcript involving the defense closing argument and the judgment and sentencing proceedings.

The court's form application for writ of habeas corpus upon which petitioner submitted his second amended petition also asked petitioner to list the grounds raised in any state court challenge(s) to his conviction. (Id. at 6.) In response to this question, petitioner referred this court to the table of contents attached to his briefing in the California Court of Appeal and California Supreme Court. (Id.) Petitioner also attached those tables of contents, so that they appeared on the following pages of the form habeas application. (Id. at 7-13.)[8] Several pages

---

[8] The tables of contents set forth petitioner's claims raised in state court: sufficiency of the evidence to support petitioner's conviction on the rape charge, jury instruction error, and error in the admission of evidence of prior acts of domestic violence.

9

later, the form asked petitioner to set forth the claims he was making in his federal habeas petition. (Id. at 15-16.) Petitioner complied with this request by describing his claims on the appropriate pages. (Id.) Those are the claims as described above.

The federal claims described by petitioner on the form petition appear to be significantly different than the issues that he raised on appeal in state court. Specifically, none of the claims petitioner describes in his second amended petition before this court mention the jury instructions given at his trial or the admission into evidence of prior acts of domestic violence. Conversely, petitioner's state court briefs on appeal do not reflect claims of ineffective assistance of counsel, double jeopardy, or prosecutorial misconduct in not disclosing exculpatory material to the defense. However, upon close comparison of petitioner's arguments advanced before the California Court of Appeal with his statements in the "claims" section of the second amended petition pending before this court, it appears that petitioner may be attempting to challenge in this federal habeas action the sufficiency of the evidence admitted at trial to support his conviction on the rape charge. As set forth above, petitioner also challenged the sufficiency of the evidence on the rape charge in his appeal filed in the California Court of Appeal and in his petition for review before California Supreme Court, thereby exhausting that claim in state court. In light of these circumstances, this court will address petitioner's allegations in the second amended petition before this court which can be liberally construed as a claim of insufficient evidence with regard to the rape charge.

Petitioner's other claims contained in the second amended petition clearly do not appear to have been exhausted in state court. Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Casey v. Moore, 386 F.3d 896, 915-16 (9th Cir. 2004). However, an application for a

writ of habeas corpus "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable"). Pursuant to 28 U.S.C. § 2254(b)(2), this court will deny petitioner's unexhausted claims on the merits, inasmuch as the nature of those claims can be deciphered by the court.

Petitioner's claims raised in state court that the trial court erred in failing to instruct the jury on lesser included offenses, in instructing the jury on witness credibility in a biased manner, and in admitting into evidence prior acts of domestic violence, have not been raised in the instant petition and therefore will not be addressed by this court. A careful review of the court file reflects that petitioner did not intend to present these claims in his federal habeas petition.[9] Because the court has elected to address both petitioner's exhausted and unexhausted claims raised in the instant petition on the merits, respondent's motion to dismiss will be denied.

B. Insufficient Evidence

Petitioner argues that the evidence introduced at his trial was insufficient to support his conviction for rape. (Sec. Am. Pet. at 15.) On his form petition, petitioner states that he and the victim went to the dance club together, contrary to her trial testimony that she went alone. (Id.) He also argues that evidence not introduced at his trial would have supported his

---

[9] Even assuming arguendo petitioner intended to present to this court all of the claims contained in his state court pleadings on appeal, he has not demonstrated entitlement to habeas relief with respect to any of those claims. Petitioner did not list his claims of jury instruction error or the admission into evidence of his prior acts of domestic violence in the section of the habeas form provided for the listing of claims, nor did he include any argument in support of those claims. Petitioner bears the burden of showing that the state court adjudication of the merits of his exhausted claims resulted in a decision that was contrary to, or involved an unreasonable application of federal law. 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362 (2000); Scott v. Schriro, 567 F.3d 573, 580 (9th Cir. 2009). Thus, petitioner has failed to carry that burden with respect to his claims of jury instruction error and the improper admission of evidence.

11

testimony that he spent the weekend with the victim and members of her family, and that he had "no intentions of harming" the victim. (Id.) He contends that several witnesses could have testified to this. (Id.) Petitioner argues that "conclusions were not made" as to whether or not "a rape was found on her." (Id.) He also states there was "no DNA" supporting the victim's testimony that "she was brutally hit by a pan and my fist." (Id.) Petitioner explains that the victim's face was "red" because she assaulted petitioner and he "return[ed] the slap." (Id. at 16.) He explains that the victim had "a history of a bad temper" and that she was "due in court" on various criminal charges on the day after her birthday. (Id. at 16.) Finally, petitioner mentions "recantation of witness." (Id. at 15.)[10]

Attached to the form petition are several handwritten pages in which petitioner gives his version of the relevant events. (Id. at 24-33.) Essentially, petitioner states that: (1) he spent the weekend prior to the victim's birthday with her and her family; (2) he and victim had consensual sex during that time; (3) he and the victim went together to the dance bar, where they encountered two women who had previously been friendly with petitioner; (4) the victim got jealous and wanted to leave, so she and petitioner left the club and went back to petitioner's trailer; (5) the victim told petitioner that she was due in court the next day on charges involving a DUI and resisting arrest; (6) petitioner and the victim had an argument about the two women, during which they slapped each other in the face and the victim fell down; and (7) the victim slept at petitioner's trailer but left the next morning, threatening to do harm to petitioner. (Id.) Petitioner denies that any rape occurred.

On appeal, petitioner argued that his conviction on the rape charge was not supported by sufficient evidence because the victim had made conflicting statements regarding whether she spent time with petitioner in the days preceding the assault. The California Court of Appeal rejected this argument, reasoning as follows:

---

[10] It is possible this is a reference to inconsistencies between the victim's trial testimony and her prior statements to the police.

> As with any other element of an offense, evidence of the nonconsensual penetration necessary to prove forcible rape may be circumstantial, such as the condition of the victim's person and events before or after the unknown event. (People v. Earp (1999) 20 Cal.4th 826, 888-889 [condition of genitals of infant left with defendant]; People v. Holt (1997) 15 Cal.4th 619, 668-669 (Holt ) [condition of victim's vagina]; People v. Gibbs (1983) 145 Cal.App.3d 794, 798 [defendant's sexually aggressive conduct before choking victim into unconsciousness and physical proximity afterward, along with soreness in victim's vagina]; People v. Vicencio (1945) 71 Cal.App.2d 361, 362-363, 365 [genital soreness after act and enlarged condition of minor's vagina].)
>
> The defendant admits that the victim's testimony and the forensic evidence ordinarily would be substantial circumstantial evidence of a nonconsensual penetration. He asserts, however, that this case presents an "unusual wrinkle" because, as even the prosecutor conceded, the victim's claim that she had not seen the defendant for weeks before her birthday was inconsistent with her contrary statements to investigators on the morning following the attack.
>
> The "wrinkle" does not take this case outside the customary situation of a resolution of conflicting evidence. Though the defendant may have attested to several ejaculations during acts of consensual intercourse with the victim in the 24 hours before her birthday, the jury could reject this testimony. The victim's statements to the investigators soon after the incident did not refer to consensual intercourse with the defendant earlier on her birthday or at any point during the weekend preceding it. As a result, a reasonable juror could conclude these extrajudicial statements did not give rise to an alternative explanation for the presence of the defendant's ejaculate or the condition of her vagina on the morning after her birthday.
>
> Moreover, even if her extrajudicial statements did provide an inferential alternative explanation, the jury was nevertheless free to choose to resolve these conflicting inferences in favor of a cumulative act of nonconsensual penetration at the defendant's trailer, especially given the victim's testimony regarding the state of her attire on regaining consciousness and the fleeting memory of the defendant removing her underwear. This is a rational choice among inferences, not speculation, and therefore is substantial evidence. (Holt, supra, 15 Cal.4th at p. 669.)

(Opinion at *3-4.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to

13

1  constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There
2  is sufficient evidence to support a conviction if, "after viewing the evidence in the light most
3  favorable to the prosecution, any rational trier of fact could have found the essential elements of
4  the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he
5  dispositive question under Jackson is 'whether the record evidence could reasonably support a
6  finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir.
7  2004) (quoting Jackson, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces
8  a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction
9  on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In
10  order to grant the writ, the federal habeas court must find that the decision of the state court
11  reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.
12  Id. at 1275 & n.13.

13        Viewing the evidence in the light most favorable to the verdict, the undersigned
14  concludes that there was sufficient evidence introduced at petitioner's trial from which a rational
15  trier of fact could have found beyond a reasonable doubt that petitioner raped the victim.  The
16  evidence, as summarized by the California Court of Appeal, supports the jury's verdict on the
17  rape charge. This is true even though the victim gave conflicting testimony about when she had
18  last seen petitioner.  The jury was free to disregard or disbelieve petitioner's testimony as well as
19  any of the testimony given by the victim.  Further, as noted by the state appellate court, because
20  the victim did not tell the police she had consensual intercourse with petitioner on the days
21  preceding the assault, her statement that she had spent time with him during that period had no
22  significant bearing on whether she was raped.  The state courts' denial of habeas relief with
23  respect to petitioner's insufficient evidence claim is not an objectively unreasonable application
24  of Jackson and Winship to the facts of the case.  Accordingly, petitioner is not entitled to federal
25  habeas relief with respect to this claim.
26  /////


      C.  Brady Claim

Petitioner claims that his conviction was obtained "by a violation of the privilege against and to disclose to the defendant evidence favorable to defendant." (Sec. Am. Pet. at 15.) In this regard, petitioner explains that there were witnesses who could have supported his testimony that he did not intend to harm anyone and that he in fact spent time with the victim on the days preceding the assault. (Id.) In another "claim," petitioner complains that there was no "DNA" to support the victim's testimony that she was "brutally hit by a pan and [petitioner's] fist." (Id.) He also claims that evidence the victim "was due in court on a DUI, speed chase, destruction of county property a patrol car window resisting arrest" was "supress [sic]." (Id. at 16.)

To the extent petitioner is claiming that the prosecutor improperly failed to disclose exculpatory evidence to the defense, he has not established that he is entitled to federal habeas relief. "The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). See also Youngblood v. West Virginia, 547 U.S. 867, 869 (2006) ("A Brady violation occurs when the government fails to disclose evidence materially favorable to the accused"). The duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). There are three components of a Brady violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). See also Banks v. Dretke, 540 U.S. 668, 691 (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005). In order to establish prejudice, petitioner must demonstrate that "'there is a reasonable probability' that the result of the trial

15

would have been different if the suppressed documents had been disclosed to the defense." Strickler, 527 U.S. at 289.

Petitioner's unsupported assertion that there were witnesses who could have testified consistently with his trial testimony, and his statement that "no DNA was found," are insufficient to establish prejudice with respect to this claim. There is no evidence before this court that any such witnesses or DNA evidence exists. Petitioner's assertion that the victim was "due in court" and/or was "going to do jail time" is also insufficient to establish a Brady violation. Petitioner explains elsewhere in his second amended petition that the victim told him this information prior to his arrest. "Where the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a Brady violation by not bringing the evidence to the attention of the defense." United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978). See also United States v. Dupuy, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) (citing Brown); United States v. Griggs, 713 F.2d 672, 674 (11th Cir. 1983) ("Where defendants . . . had within their knowledge the information by which they could have ascertained the supposed Brady material, there is no suppression by the government").

In short, petitioner has failed to demonstrate the prosecutor at his trial withheld any materially favorable evidence or that there is a reasonable probability the result of his trial would have been different if the allegedly suppressed evidence had been disclosed. Accordingly, petitioner is not entitled to relief on this claim.

D.  Double Jeopardy

Petitioner claims that his conviction was "obtained by a violation of the protection against double jeopardy." (Sec. Am. Pet. at 15.) On the same portion of the form habeas application petitioner also states, "recantation of witness." (Id.) Petitioner explains that the evidence introduced at his trial did not support the jury's verdict and/or that relevant evidence was not introduced at his trial. (Id.)

/////

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life." The Clause applies to the states under the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784 (1969). The double jeopardy clause prevents multiple trials on the same charge, United States v. DiFrencesco, 449 U.S. 117 (1980), and multiple punishments for the same offense. United States v. Arrelano-Rios, 799 F.2d 520, 524 (9th Cir. 1986).

Petitioner has not demonstrated that the challenged conviction was obtained in violation of the Double Jeopardy Clause. The fact that the victim gave conflicting statements regarding whether she spent time with petitioner in the days preceding the assault does not provide the basis for a cognizable double jeopardy claim. Even evidence that the victim recanted her testimony, none of which has been presented to this court, would not establish a violation of the Double Jeopardy Clause. Nor is the Double Jeopardy Clause implicated by a failure to introduce relevant evidence at trial or a lack of sufficient evidence to support the jury's verdict. Accordingly, petitioner is not entitled to habeas relief with respect to his double jeopardy claim.

### E. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance. Indeed, most of petitioner's "claims" as set forth in the amended petition before this court involve allegations that relevant evidence was not introduced at his trial. Specifically, petitioner alleges that: (1) there were witnesses who could have supported his trial testimony that he spent time with the victim before the assault and that he went to the dance club with her; (2) there was no evidence introduced that "a drug rape was found on her;" (3) there was no DNA evidence produced; and (4) his trial counsel failed to produce evidence that the victim "had a court appointment for DUI [and] a failure to appear," on the morning after her birthday. (Sec. Am. Pet. at 15-16, 29.)

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  466 U.S. at 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'"  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Petitioner has failed to demonstrate either deficient performance or prejudice with respect to his claims of ineffective assistance of trial counsel.  Although petitioner complains that his trial counsel failed to call witnesses who could have corroborated his trial testimony, there is no evidence before this court that any witnesses would have testified in petitioner's favor.  See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what a proposed witness would say is not enough to establish prejudice); United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); United

States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing). In any event, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294, 1321 (2nd Cir. 1987). Reasonable tactical decisions, including decisions with regard to the presentation of the case, are "virtually unchallengeable." Strickland, 466 U.S. at 690. Here, there is no evidence before this court that trial counsel's decisions with respect to the calling of witnesses was unreasonable. Petitioner has also failed to establish ineffective assistance with respect to trial counsel's alleged failure to introduce DNA evidence or evidence that the victim had a bad temper and/or had been charged with a crime. First, there is no evidence before this court establishing that such evidence existed and could have been offered on petitioner's behalf. Second, even if such evidence did exist, there is no reasonable probability that its introduction would have led to a different result at petitioner's trial.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court is directed to remove the assignment of this case to District Judge Frank C. Damrell and reassign the case to Magistrate Judge Dale A. Drozd pursuant to the parties' consents to the jurisdiction of the Magistrate Judge;

2. Respondent's May 15, 2010 motion to dismiss (Dkt. No. 23) is denied;

/////
/////
/////
/////
/////

3. Petitioner's application for a writ of habeas corpus is denied and this case is closed; and

4. The court declines to issue a certificate of appealability in this action.

DATED: September 15, 2010.

*[signature: Dale A. Drozd]*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
tapia1291.hc2